Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7953 | **DATE** | 1/28/2004 |
| **CASE TITLE** | | Raymond vs. Sakelakos | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, the Court hereby denies defendants Raymond, City of Naperville and Sakelakos' motions to dismiss. The schedule previously set by the Court is to stand.

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | JAN 29 2004 | |
| | Notified counsel by telephone. | | | date docketed | 31 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| MW | courtroom deputy's initials | | | date mailed notice | |

Date/time received in central Clerk's Office — mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL RAYMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 7953 |
| ) | |
| OFFICER JAMES SAKELAKOS, et al., ) | |
| ) | |
| Defendants. ) | |

DOCKETED
JAN 2 9 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This mater is before the court on Defendant Cecilia Raymond's motion to dismiss and on Defendants City of Naperville's, James Sakelakos' ("Sakelakos), and Randy Clem's ("Clem") motion to dismiss. For the reasons stated below we deny the motions.

## BACKGROUND

Plaintiff alleges that on March 31, 2001, he got in an argument at home with his wife, Defendant Cecilia Raymond. Plaintiff claims that his wife provoked the argument and struck him with an object. Plaintiff alleges that after the argument he left his home, called his attorney, and then proceeded to the police station and reported the incident. Plaintiff claims that he then returned to his house accompanied by Defendant Sakelakos who was a Naperville police officer. Sakelakos allegedly told Plaintiff to stay in the kitchen while Sakelakos talked to Plaintiff's wife in the living room. According to Plaintiff, after Sakelakos spoke with Plaintiff's

1

wife, Sakelakos did not arrest his wife as Plaintiff apparently desired. Instead, Sakelakos allegedly called Plaintiff a "rich Jew" and told him that he would not be "so lucky" if Sakelakos ever had to return to the house. On April 8, 2001, Cecilia Raymond filed for divorce. In the interim, Plaintiff and Cecilia Raymond apparently continued to reside at the same residence. In May of 2001 Plaintiff claims that he discovered that personal items were missing from his car and he claims that he told Cecilia Raymond that he intended to file theft charges against her. Plaintiff claims that Cecilia Raymond called the Naperville police and pleaded with them not to allow Plaintiff to file a theft charge against her and that Naperville police officers arrived at the Raymond's home. Thereafter Defendant Sakelakos allegedly arrived at the Raymond's residence with Defendant Clem who was also a Naperville police officer. Sakelakos allegedly told the other officers to leave and to let him try and resolve the dispute. Plaintiff claims that after the other officers left the residence, Sakelakos, Clem, and Cecilia Raymond conspired together at the Raymond's residence to fabricate a false story that Plaintiff threatened to strike Cecilia. Sakelakos and Clem arrested Plaintiff and took him into custody. Plaintiff has brought a four count complaint alleging a federal false arrest claim (Count I), a state law malicious prosecution claim (Count II), a claim against the City of Naperville based on a violation of 745 ILCS 10/9-102 (Count III), and a federal due process claim (Count IV).

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v.*

*Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 444-45 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

### I. *Res Judicata* and Collateral Estoppel

In both motions to dismiss pending before this court Defendants argue that all claims are barred under the doctrines of *res judicata* and collateral estoppel. The doctrine of *res judicata* is applicable if: 1) there was a final judgment on the merits, 2) "there is an identity of causes of action," and 3) "there is an identity of parties or their privies." *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). When the prior alleged litigation is in a state court the doctrine of *res judicata* applies only if "the law of the state in which the prior judgement is rendered would give that judgment preclusive effect against the claims asserted in the federal action. . . ." *Welch*

*v. Johnson*, 907 F.2d 714, 719 (7th Cir. 1990). An exception to the doctrine of *res judicata* exists when the plaintiff "did not have a full and fair opportunity to litigate his claim in state court." *Licari*, 298 F.3d at 666-67. Under Illinois law the doctrine of collateral estoppel bars a party from pursuing an issue in litigation that has been previously decided by a "valid and final judgment." *American Nat. Bank & Trust Co. of Chicago v. Regional Transp. Auth.*, 125 F.3d 420, 430 (7th Cir. 1997).

Cecilia Raymond argues that Plaintiff is precluded from bringing any claims based upon the facts surrounding the alleged conspiracy because the claims and issues were addressed by a state court judge that issued an order of protection against Plaintiff. On May 22, 2001, after Sakelakos and Clem arrested Plaintiff, Cecilia filed a petition for an emergency order of protection against Plaintiff. In her petition Cecilia Raymond alleged, among other things, that Plaintiff threatened to throw a barbell at her. A trial court judge in Will County Illinois issued an emergency order of protection on May 22, 2003. On June 12, 2001, after a hearing, the judge entered a plenary order of protection. Plaintiff subsequently filed a motion to vacate the protective order which was denied and on appeal an Illinois appellate court affirmed the trial court judge's ruling.

Cecilia Raymond argues that the issues in this case were already decided by the state trial court judge and the state appellate court. We disagree. The state trial court judge's concern in evaluating the petition for an order of protection was whether or not Plaintiff was an immediate threat to the safety of Cecilia Raymond and the judge needed to consider the exigencies of the situation in making his ruling. The judge was not concerned with whether or not Cecilia entered into a conspiracy against Plaintiff. Apparently the state trial court judge concluded that Plaintiff

was a threat to the safety of Cecilia Raymond. However, neither the emergency order of protection, nor the plenary order of protection consist of more than a general order without any specific factual findings. Neither order contains, for instance, a specific finding that Plaintiff threatened to throw a barbell at Cecilia Raymond. Even if the state trial court had found that Plaintiff threatened to strike Cecilia Raymond such a finding in a hearing concerning a protective order would not have a preclusive effect against claims in a federal civil rights action.

There is not an identities of parties in this case and the state court case. In this case Defendants include Cecilia Raymond, Sakelakos, and Clem. The petition for an emergency order of protection was not brought by Sakelakos or Clem. There is no indication that at the June 12, 2003 hearing that Sakelakos or Clem testified at the hearing or that Plaintiff had the opportunity to cross examine them. Neither are there identities of causes of action. The type and purpose of the actions are entirely different. Although some of the alleged conduct in question in each case occurred at the same date and time, the facts pertinent to each case are not synonymous. The trial judge, in determining whether Plaintiff represented a threat to Cecilia Raymond, needed to consider a different spectrum of facts than the facts that are relevant in this case. This is evident from the allegations asserted in the emergency petition for a protective order. In the petition Cecilia Raymond alleges that Plaintiff made several abusive threats to herself and her children in April and threatened to throw her and their children out of their home. She also alleges in the petition that Plaintiff woke the children during the "early A.M. hours" and harassed them. She also states in the petition that Plaintiff threatened to cancel credit cards, steal the car, steal the children, kill the dog, and let the dog and the children starve. In addition, in an incident apparently separate from the alleged barbell incident, Cecilia alleges that Plaintiff threatened to

kill her and "crush [her] anyway he [could.]" Whether or not Sakelakos and Clem conspired with Cecilia Raymond to frame Plaintiff was not at issue in the state court case. The state court did not find that Plaintiff threatened to strike Cecilia with a barbell. Cecilia argues that we should presume that the court made such a finding, but we are not prepared to hold that Plaintiff had a full and fair opportunity to litigate his claims based on such a tenuous inference drawn from the state trial court judge's order. Thus we find that the claim at issue in the protective order case and the claims in the instant case are not the same claims and that they are not even closely related.

Naperville and the defendant officers argue that the state trial court judge held that the police had probable cause and therefore, the issue cannot be relitigated in the instant action. However, as indicated above, the state trial court judge was concerned with the safety of Cecilia Raymond. Whether or not the police had probable cause to arrest Plaintiff had no direct bearing on the protective order determination. There were no explicit findings that the police had probable cause by the state trial court judge or the appellate court and the language of the state courts' orders is simply too general to justify such an assumption. Perhaps the trial court judge was unsure whether or not Plaintiff threatened to throw a barbell at Cecilia Raymond, but considering the other allegations, the judge thought it prudent to issue the protective order. Perhaps, the trial court judge suspected that Defendants conspired to fabricate a story. The trial court judge may have suspected that Defendants conspired to embellish the story, but the judge may have been convinced that some type of threat was made and concluded that in the interest of Cecilia Raymond's safety that a protective order was appropriate. These scenarios illustrate the uncertainty behind Defendants' arguments. Naturally Defendants would argue that we should

6

make all inferences that favor their position, but such speculation is not sufficient to convince us that Plaintiff's claims presented in the instant suit were addressed by the state court.

Naperville and the defendant officers also argue that the doctrine of *res judicata* applies to the instant claims because Plaintiff could have presented the claims in the prior state case. The Seventh Circuit recognizes that the doctrine of *res judicata* bars the litigation of claims for which a final judgment has already been issued or for claims that could have been tried in the prior litigation. *Welch*, 907 F.2d at 719. Plaintiff could not have presented the claims in the instant case in the state court action. As indicated above the relevant issues in the state court case and in the instant action are entirely different. Also, Defendants fail to offer any support for their conclusion that had Plaintiff asked, the state trial court, while holding a hearing pertaining to a protective order would have allowed Plaintiff pursue the claims asserted in this action against the petitioner and allowed Plaintiff to call witnesses and prosecute all of the claims included in the instant suit. Nor have Defendants provided support for their apparent contention that the trial court judge had authority to address all of the claims in the instant suit during the protective order proceedings. Thus, we find that Plaintiff could not have brought his claims during the trial court proceedings and received a full and fair hearing regarding those claims.

Defendants also argue that Plaintiff had a full and fair opportunity to litigate his claims because his allegations regarding the conspiracy were considered by the state appellate court. However, the appellate court did not offer Plaintiff an opportunity to try the merits of his claims. The appellate court conducted an appellate review, stating that it was "presumed that the trial court acted in conformity with the law." The appellate court merely concluded that "the trial court did not abuse its discretion." The appellate court did not specifically find that Plaintiff

7

threatened to strike Cecilia. In fact, when considering the alleged fraud upon the court by Cecilia, the appellate court avoided making such a finding. The court noted that although Plaintiff "characterizes Cecilia's testimony as a fraud on the court[,] . . . [h]is newly discovered evidence only tends to impact Cecilia's credibility and does not definitively show that she lied under oath." Thus, the state appellate court did not offer plaintiff an opportunity to try the claims or issues included in the instant suit.

## II. Service of Process

Cecilia Raymond also argues that the false arrest and due process claims should be dismissed because she was not served in a timely fashion. Federal Rule of Civil Procedure 4(m) states that a plaintiff must be served within 120 days after the filing of a complaint. A district court is authorized to grant an extension for service if the plaintiff shows "good cause," Fed. R. Civ. P. 4(m), which "means a valid reason for delay, such as the defendant's evading service." *Coleman v. Milwaukee Bd. of School Dirs.*, 290 F.3d 932, 933-34 (7th Cir. 2002). Cecilia Raymond was served in this case 220 days after the filing of the complaint. Plaintiff claims that he mailed a summons to Cecilia's residence on two occasions. Plaintiff also claims that an unknown caller, identifying herself as Cecilia Raymond, asked Plaintiff's counsel on the phone for some additional time to hire an attorney. Judge Shadur, the prior judge in this case, granted Plaintiff an extension of time beyond the 120 day service limit and Plaintiff served Cecilia Raymond within the allowed extended period. Judge Shadur clearly believed that Plaintiff had good cause to request such an extension and none of Cecilia Raymond's current arguments or her affidavit attached to her motion to dismiss convince us that Judge Shadur was mistaken. We are

8

not convinced that Plaintiff did not exercise reasonable diligence in serving Cecilia Raymond.

## CONCLUSION

Based on the foregoing analysis we deny Cecilia Raymond's motion to dismiss. We also deny the motion to dismiss brought by Naperville, Sakelakos, and Clem. We note that for the purposes of the motions to dismiss we are required to accept as true all of Plaintiff's allegations and we are not ruling on the merits of Plaintiff's claims. Whether or not Plaintiff's claims can survive a dispositive motion and whether or not the Plaintiff will succeed at trial are separate matters.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 28, 2004